# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GOOD SPORTSMAN　　　　　　　§
MARKETING, L.L.C.　　　　　　§
　　　　　*Plaintiff*,　　　　　　§
　　　　　　　　　　　　　　　　§
　　vs.　　　　　　　　　　　　§　　　CASE NO. 4:23-cv-3243
　　　　　　　　　　　　　　　　§
RUGGED CROSS HUNTING　　　§
BLINDS, L.L.C.　　　　　　　　§
　　　　　*Defendant*.　　　　　§

**PLAINTIFF GOOD SPORTSMAN MARKETING LLC'S**
**<u>MOTION TO ENFORCE SETTLEMENT</u>**

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................... 1

LAW & ARGUMENT ................................................................................................. 6

    I.    Legal Standard ............................................................................................... 6

    II.   A Settlement Has Been Reached..................................................................... 8

    III.   GSM is entitled its attorney's fees for bringing this motion......................... 12

CONCLUSION.......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*APS Capital Corp. v. Mesa Air Grp., Inc.*,
  580 F.3d 265 (5th Cir. 2009) ....................................................................7, 8

*Aro Corp. v. Allied Witan Co.*,
  531 F.2d 1368 (6th Cir.) ...............................................................................6

*Bello v. Milliman, Inc., No. 3:25-CV-474-N-BW*,
  2026 U.S. Dist. LEXIS 36387 (N.D. Tex. Jan. 20, 2026) ............................9

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ......................................................................................12

*Chen v. Highland Cap. Mgmt., L.P., No. 3:10-CV-1039-D*,
  2012 U.S. Dist. LEXIS 168420 (N.D. Tex. Nov. 27, 2012) ....................6, 7

*CIA Anon Venezolana de Navegacion v. Harris*,
  374 F.2d 33 (5th Cir. 1967) ...........................................................................6

*Coe v. Chesapeake Expl., L.L.C.*,
  695 F.3d 311 (5th Cir. 2012) .........................................................................7

*Farner v. CHCA Bayshore, L.P., No. 3:22-cv-00369*,
  2023 U.S. Dist. LEXIS 150987 (S.D. Tex. Aug. 28, 2023) ..........................9

*Fulgence v. J. Ray McDermott & Co.*,
  662 F.2d 1207 (5th Cir. 1981) .......................................................................8

*Guidry v. Halliburton Geophysical Servs., Inc.*,
  976 F.2d 938 (5th Cir. 1992) .........................................................................7

*In re Deepwater Horizon*,
  786 F.3d 344 (5th Cir. 2015) ...................................................................7, 12

*Lee v. Gulf Coast Blood Ctr., No. H-19-4315*,
  2020 U.S. Dist. LEXIS 145806 (S.D. Tex. Aug. 13, 2020) .........7, 9, 10, 11

*Lozano v. Metro. Transit Auth. of Harris Cty., No. CV H-14-1297*,
  2016 U.S. Dist. LEXIS 94031 (S.D. Tex. July 19, 2016) ............7, 9, 10, 11

*Lyles v. Commercial Lovelace Motor Freight, Inc.*,
  684 F.2d 501 (7th Cir.1982) ...........................................................................................6

*McGovern v. Enter. Restoration Servs., L.L.C., No. CV 19-12525*,
  2020 U.S. Dist. LEXIS 84883 (E.D. La. May 14, 2020) .........................................10

*Neeley v. Bankers Tr. Co. of Tex.*,
  757 F.2d 621 (5th Cir. 1985) ...........................................................................................7

*Neizvestny v. Risis, Civil Action No. 19-20398 (MF)*,
  2021 U.S. Dist. LEXIS 1735 (D.N.J. Jan. 6, 2021) .................................................10

*Quesada v. Napolitano*,
  701 F.3d 1080 (5th Cir. 2012) ........................................................................................8

*Seals v. Herzing Inc. - New Orleans*,
  482 F. App'x 893 (5th Cir. 2012) ..................................................................................12

*Simon v. Barrett Steel Energy Prods., No. H-17-3831*,
  2018 U.S. Dist. LEXIS 72675 (S.D. Tex. Apr. 30, 2018) ...........................................7

*Wise v. Wilkie*,
  955 F.3d 430 (5th Cir. 2020) ....................................................................................6, 12

*Yaya v. Driscoll Child.'s Hosp., No. 2:24-CV-00205*,
  2025 U.S. Dist. LEXIS 179875 (S.D. Tex. Sep. 15, 2025) .......................................11

iii

Plaintiff Good Sportsman Marketing LLC ("GSM") requests the Court to enforce the settlement agreed to by GSM and Defendant Rugged Cross Hunting Blinds LLC ("RCHB" or "Rugged Cross"). The parties' respective counsel arrived at the settlement via email correspondence, and the parties had reached agreement on all material terms. In reliance upon the settlement, both parties cancelled depositions and released witnesses, and GSM's executives were informed that the case had been settled.

Although the parties reached agreement on the material terms, RCHB now seeks to insert a new condition precedent. Although the parties agreed, as an important and material term, to jointly *file* a motion requesting the Court vacate its *Markman* order, after the settlement agreement was reached, RCHB suddenly and inexplicably began to contend that settlement was conditional on the Court's *granting* that motion. But this was never part of the agreement, and this Court should enforce the settlement agreement that the parties actually reached. Additionally, GSM seeks its attorney's fees and costs associated with bringing this motion.

## BACKGROUND

The parties most recently began settlement negotiations on April 23, 2026 pursuant to a phone conversation during which RCHB's counsel made an offer to GSM's counsel. Decl. of J. David Cabello ("Cabello Decl.") at ¶ 4. Since there had been some misunderstanding in the past, that offer was reduced to writing in GSM's counsel's email to RCHB's counsel dated April 24, 2026 with a specific request that RCHB's counsel correct any misunderstanding of the verbal offer:

> As I understand your proposals, RCHB is prepared to settle the case on either of two approaches below:
>
> 1. Payment to RCHB of $█████ in a lump sum for a paid up, irrevocable, non-exclusive license, or
>
> 2. Payment to RCHB of $█████ in a lump sum payment plus $███/year (██████ calculated on the basis of 10k tents/years at ███/tent royalty) for

1

> 10 years (the approximate life of the patents) but without the necessity of any royalty reporting or audits – with the license being non-exclusive
>
> If my summary of RCHB's settlement proposal is incorrect, please let me know.

*Id*. at ¶ 4; *see also* Exhibit A at pp. 11-12 (emphasis in original).  No correction was made.  Cabello Decl. at ¶ 4. In that same email, GSM's counsel responded to RCHB's offer as follows:

> GSM pays $███████ now.
>
> GSM will pay an additional $███████ the court changes the claim construction OR permits Rugged Cross to assert a new claim (Rugged Cross has had a motion pending on each of these issues since late December)
>
> GSM will pay an additional $█████ if the CAFC decides the PTAB IPR appeal against DBR.[1]
>
> If the parties settle it will be on the basis of a confidential settlement, an irrevocable, royalty free license, a general release without admission of liability and on a lump sum basis (no future royalties of any kind) and for the entire patent family.

Exhibit A at pp. 13-14.

On April 27, 2026, RCHB's counsel rejected GSM's offer and countered with the following:

> RCHB rejects GSM [*sic*] offer and offers the following:
>
> Option 1: GSM pays RCHB a) $██████ now with the parties ***jointly requesting the Court to vacate its claim construction order***; and b) $██████ upon the CAFC either affirming the IPR decision or dismissal of the appeal.
>
> Option 2: GSM pays RCHB a) $██████ now with the parties ***jointly requesting the Court to vacate its claim construction order***; and b) upon the CAFC either affirming the IPR decision or dismissing the appeal, GSM pays RCHB an additional royalty of $██████ in installments of $████ year for 10 years.

Cabello Decl. at ¶ 5; Exhibit A at p. 10 (emphasis added).

---

[1]  The reference to the DBR IPR appeal is with respect to an IPR filed by DBR challenging the validity of the '535 patent.  In that proceeding the PTAB's Final Written Decision held that the challenged claims were valid. An appeal by DBR followed which is pending.

On April 29, GSM's counsel rejected RCHB's offer and countered as follows:

GSM pays RCHB $██████ now with the ***parties jointly requesting the Court to vacate its claim construction order*** and $██████ upon the CAFC either affirming the DBR IPR decision or dismissal of the appeal.

Cabello Decl. at ¶ 5; Exhibit A at p. 8 (emphasis added).

The same day, RCHB's counsel countered as follows:

Regarding settlement, RCHB offers the following:

Option 1: GSM pays RCHB a) $██████ now with the ***parties jointly requesting the Court to vacate its claim construction order***; and b) $██████ upon the CAFC either affirming the IPR decision or dismissal of the appeal.

Option 2: GSM pays RCHB a) ██████ now with the ***parties jointly requesting the Court to vacate its claim construction order***; and b) upon the CAFC either affirming the IPR decision or dismissing the appeal, GSM pays RCHB an additional royalty of $██████ in installments of $████ /year for 10 years.

Cabello Decl. at ¶ 5; Exhibit A at p. 6 (emphasis added).

On April 30, 2026 GSM rejected RCHB's prior offer and countered as follows:

Here's a revised counteroffer which removes any contingency based on DBR's IPR.

$████ now to settle this dispute. This is a substantial increase over our previous $████ proposal when we discussed settlement over a year ago....***If we settle the case, settlement will be on the basis of a confidential settlement, an irrevocable, royalty free license, a general release without admission of liability and on a lump sum basis (no future royalties of any kind) and for the entire patent family.***

Cabello Decl. at ¶ 5; Exhibit A at p. 5 (emphasis added).

RCHB countered on April 30, 2026:

RCHB offers to settle this case for $██████ for a paid-up license for the entire family of patents. The other terms you proposed are acceptable. In addition, the parties shall ***jointly request the court to vacate its claim construction order***.

Cabello Decl. at ¶ 5; Exhibit A at p. 4 (emphasis added).

The same day, GSM countered:

[I]t appears we're making progress. Although we're trying hard to resolve this dispute, I'm concerned that we're about out of runway. But in an effort to settle this dispute on the terms previously set forth ***including a joint motion to withdraw the claim construction order***, GSM offers $█████.

Cabello Decl. at ¶ 5; Exhibit A at p. 3 (emphasis added).

On May 1, 2026 RCHB made the following counteroffer:

RCHB is willing to drop to $████████ to settle this case today.  ***Settlement of course would be according to previously understood terms including the joint motion for vacatur of the claim construction order.***

Cabello Decl. at ¶ 5; Exhibit A at p. 2 (emphasis added).

GSM immediately countered as follows:

Appreciate the movement.  We can settle the case today by entering into a binding term sheet.  To that end, GSM offers $█████ which is the limit of our client's authority.

Cabello Decl. at ¶ 5; Exhibit A at p. 2.  Then, at last, on May 1, 2026, RCHB accepted GSM's settlement offer:

***RCHB accepts GSM's offer*** of $██████  If you want to prepare a binding term sheet go ahead, but you may as well prepare a draft settlement agreement to move this matter forward to closing

Cabello Decl. at ¶ 5; Exhibit A at p. 1 (emphasis added).  GSM's counsel responded the same day as follows:

Thanks for your efforts and assistance ***in getting this case resolved***.  We'll get started on a definitive settlement agreement.

***We will cancel the pending depositions and release the witnesses.***

Will you and/or John draft a motion to withdraw the court's prior claim construction order?  We can attach that as an exhibit to the settlement agreement.  At some point ***we need to alert the court to the settlement*** although I'm reluctant to merely tell the court that ***we've settled*** because courts in this district immediately close a case unless a dispute arises with respect to settlement and since we're trying to get the claim construction order vacated, probably should hold on any notification to the court.

John Edmonds [RCHB's Local Counsel]:  Do you have any suggestions or ideas? Cabello Decl. at ¶ 5; Exhibit A at p. 1 (emphasis added).  The parties then mutually agreed to cancel depositions and release witnesses, which they did.  Cabello Decl. at ¶ 5; Exhibit A at p. 1. GSM further requested, and was given, RCHB's wiring instructions.  Cabello Decl. at ¶ 6; Exhibit B.

But on May 4, RCHB sent GSM a draft motion to vacate that included language stating that the case would continue if the Court denied the motion.  Cabello Decl. at ¶ 7; Exhibit C.  The draft motion stated that "[t]he Parties have reached a settlement which will result in dismissal of all claims and counterclaims in this case conditioned upon the Court granting this Joint Motion." Exhibit C at p. 3.  It further stated:  "The parties had scheduled twelve depositions for the month of May to complete fact discovery; however, those depositions have been tabled in view of the parties' conditional settlement agreement….[A]s a condition of the settlement the parties have agreed to request this Court to vacate the Opinion." *Id.* at p. 4.

When GSM questioned this language, RCHB suddenly attempted to walk back the settlement and change the terms to which the parties had agreed, with RCHB's counsel stating:

> There may have been a misunderstanding.  What **we are proposing** is that the settlement **be conditioned** on the Court granting the motion to vacate.  RCHB is proposing that the parties, after agreeing to the terms of the settlement agreement, file the motion to vacate.  In addition, we follow that motion with the case status letter to get this before Judge Hanks sooner than later.  If the court grants the motion the case is finally resolved.

Cabello Decl. at ¶ 8; Exhibit D.  As shown by the correspondence detailed above, however, at no prior point had RCHB ever even suggested that the settlement was conditioned on the Court granting the motion to vacate.  *Id*.  Now, RCHB is sticking to the position that settlement was "conditional" only, so GSM seeks to have this Court enforce the settlement that was actually agreed upon.

5

**LAW & ARGUMENT**

I.    **Legal Standard**

The Fifth Circuit has recognized that "a district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (internal quotations and citations removed); *see also Lyles v. Commercial Lovelace Motor Freight, Inc.,* 684 F.2d 501, 504 (7th Cir.1982) ("Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement."); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.) ("It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them."), *cert. denied,* 429 U.S. 862 (1976); *CIA Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33, 35-36 (5th Cir. 1967) ("Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party  and will be summarily enforced. . . . We are constrained to view the proceedings as a hearing by the District Court in the exercise of its inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case.").

"A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 U.S. Dist. LEXIS 168420, at *2 (N.D. Tex. Nov. 27, 2012) (quoting *Weaver v. World Fin. Corp. of Tex.*, No. CIV.A. 3:09-CV-1124G, 2010 U.S. Dist. LEXIS 46631, at *2 (N.D. Tex. May 12, 2010)). "Federal law does not require a written, signed agreement. If the parties' communications indicate that an agreement has been reached and there are no material terms outstanding to negotiate, the court can enforce a settlement agreement made orally or by

6

email." *Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 U.S. Dist. LEXIS 145806, at *5 (S.D. Tex. Aug. 13, 2020) (citation omitted).   Federal law treats a settlement agreement as a contract. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). This means that "[a] binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Chen*, 2012 U.S. Dist. LEXIS 168420, at *2 (internal quotation marks omitted).

"An offer is judged by the parties' overt acts and words, not by the subjective or secret intent of the offeror." *In re Deepwater Horizon*, 786 F.3d 344, 355 (5th Cir. 2015). An "[a]cceptance of an offer occurs when there is 'manifestation of assent that occurs in any reasonable manner.'" *Simon v. Barrett Steel Energy Prods.*, No. H-17-3831, 2018 U.S. Dist. LEXIS 72675, at *2 (S.D. Tex. Apr. 30, 2018) (quoting *Chen*, 2012 U.S. Dist. LEXIS 168420).

To determine if a settlement agreement is an enforceable contract, "the moving party must prove that the parties reached an agreement regarding all material terms." *Lozano v. Metro. Transit Auth. of Harris Cty.*, No. CV H-14-1297, 2016 U.S. Dist. LEXIS 94031, at *3 (S.D. Tex. July 19, 2016).  A material term is one that "the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain." *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 628 (5th Cir. 1985). "Whether a term is material or essential is a legal question that the court examines on a case-by-case basis." *Coe v. Chesapeake Expl., L.L.C.*, 695 F.3d 311, 320 (5th Cir. 2012). "Courts look not only at any relevant written agreements but also at the relationship of the parties, their course of dealings, and then answer the field and fact-specific question of whether essential terms were sufficiently settled to find a contract." *APS Capital Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272-73 (5th Cir. 2009).  "A meeting of the minds on all essential terms of a settlement agreement is generally present 'where the parties have agreed upon the monetary

7

amount of the settlement payment and the fact that plaintiffs will release specific claims.'" *Id.* (quoting *In re Deepwater Horizon*, 786 F.3d at 357 n.26). An agreement on all material terms and no essential terms left to negotiate makes a binding contract. *Id.* at 272.

Once a party authorizes settlement, "that party remains bound by the terms of the agreement" and cannot "change[] his mind when presented with the settlement documents." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981). A settlement need not be reduced to writing in order to be enforceable. *Quesada v. Napolitano*, 701 F.3d 1080, 1084 n.10 (5th Cir. 2012).

## II.    A Settlement Has Been Reached

Here, GSM and RCHB entered into a binding settlement by email, which they intended to reduce to a written and signed settlement agreement. The parties agreed to all material terms, which were as follows:

1. GSM would pay RCHB ▮▮▮▮▮

2. The parties would ***jointly move*** the Court to vacate its *Markman* order;

3. The settlement would be confidential;

4. GSM would receive an irrevocable, royalty free license for the entire family of the patents in suit;

5. The parties would generally release each other without admission of liability; and

6. RCHB would not be entitled to any future royalties of any kind for the entire patent family at issue in this lawsuit.

Cabello Decl. at ¶ 5; Exhibit A. On the basis of this agreement, GSM proclaimed, "[W]e've settled," Exhibit A at p. 1, which RCHB did not contradict—and both parties then agreed to cancel depositions and release witnesses. Exhibit A at p. 1, Exhibit B at p. 2.

8

Courts in the Fifth Circuit have routinely found that a binding settlement has been reached under similar circumstances, notwithstanding the fact that the parties had not yet reduced their settlement to a formal settlement agreement or even a term sheet.  For example, the Southern District of Texas found in the case of *Farner v. CHCA Bayshore, L.P.*, No. 3:22-cv-00369, 2023 U.S. Dist. LEXIS 150987, at *5-7 (S.D. Tex. Aug. 28, 2023):

> This is not a close call. All of the material terms of the settlement are clearly set forth in the email exchange between Plaintiff's and Defendants' counsel. As I noted above, the settlement has two components: monetary and non-monetary terms. With respect to the monetary component, Hogg requested on behalf of his client a certain sum of money. Morton clearly accepted that amount by email. Turning to the non-monetary aspect of the settlement, Morton identified six non-monetary conditions in her March 2 email. Hogg also accepted those non-monetary terms by email. There is no wiggle room here….Once Hogg confirmed his understanding that the terms in Morton's March 2 email were part of the settlement, Morton told Hogg that a deal had been reached. At that time, all of the material terms had been agreed to by the parties. The settlement was complete.

*See also e.g. Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 U.S. Dist. LEXIS 145806, at *16-17 (S.D. Tex. Aug. 13, 2020) ("On May 12, the parties identified the only remaining material terms and came to an agreement on those terms when The Blood Center accepted Wheeler's offer….Because The Blood Center has accepted Wheeler's offer, the settlement agreement is binding."); *Bello v. Milliman, Inc.*, No. 3:25-CV-474-N-BW, 2026 U.S. Dist. LEXIS 36387, at *7 (N.D. Tex. Jan. 20, 2026) ("Their mutual assent to these terms is binding notwithstanding the absence of a formal written settlement agreement, as 'the parties' communications indicate that an agreement had been reached and there are no material terms outstanding to negotiate[.]'"); *Button v. Richardson Trident Co., LLC,* No. MO:20-CV-00031-DC-RCG, 2022 U.S. Dist. LEXIS 228175, at *4 (W.D. Tex. June 28, 2022) ("Here, it is undisputed that Plaintiff agreed to settle all his claims against Defendant on the record at the mediation….'Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement.'"); *Lozano v. Metro. Transit Auth.,* No. H-14-

1297, 2016 U.S. Dist. LEXIS 94031, at *8 (S.D. Tex. July 19, 2016) (enforcing settlement agreement when parties expressed an agreement to all material terms in multiple phone calls and emails); *McGovern v. Enter. Restoration Servs., L.L.C.*, No. CV 19-12525, 2020 U.S. Dist. LEXIS 84883, at *3 (E.D. La. May 14, 2020) (enforcing a settlement because the "parties manifested an intent to enter a settlement" by stating that they were "good to go" on the material terms; the fact that "the parties never signed formal settlement document does not  allow defendant to renege on the terms that have been agreed upon.").  As in *Farner* and the other cited cases, all material terms of the settlement between GSM and RCHB were set forth via email, and the parties confirmed and recognized that a deal had been reached and took steps in reliance on that fact.  The settlement was complete. While the parties referenced a formalized, final, signed settlement agreement, which is normal in similar cases, that formalized writing was not necessary because all material terms were agreed. *Cf. Neizvestny v. Risis*, Civil Action No. 19-20398 (MF), 2021 U.S. Dist. LEXIS 1735, at *9 (D.N.J. Jan. 6, 2021) ("[S]o long as the parties agree upon the essential terms of a settlement, leaving the details to be 'fleshed out' in a writing thereafter, courts will enforce settlement agreements  notwithstanding  the  absence of  a  future writing.") (analyzing settlement under New Jersey law).

Although after settlement had been agreed upon RCHB provided GSM with a draft motion to vacate that made settlement conditional upon the Court's granting that motion, "[r]aising a new concern after an agreement has been reached does not show outstanding material terms." *Lee*, 2020 U.S. Dist. LEXIS 145806, at *18-19; *see also Lozano*, 2016 U.S. Dist. LEXIS 94031, at *9 ("[T]erms that arise when formalizing the release agreement that played no part in the parties' actual negotiations cannot be considered material.").  It is clear that even RCHB understood that it was raising a new concern that the parties had not previously discussed: "[w]hat *we are*

10

*proposing* is that the settlement *be conditioned* on the Court granting the motion to vacate." Cabello Decl. at ¶ 8; Exhibit D. This Court should therefore decline to consider the idea that RCHB's new, belated condition was a material term that would preclude a completed agreement. *See Lee*, 2020 U.S. Dist. LEXIS 145806, at *18-19 (finding term not material where it was not raised "at any point in the parties' negotiations"); *see also Lozano*, 2016 U.S. Dist. LEXIS 94031, at *13 ("the evidence indicates that the parties intended to be bound by their verbal agreement assss to the material terms of the settlement, and this intent was not contingent on the settlement being reduced to writing.").

Nor can RCHB show that the parties had agreed that the settlement would not be binding until written and signed, and as such there is no basis for refusing to find that the parties settled via email. Though reference was made by GSM to a "binding term sheet," RCHB stated that no such term sheet was necessary. *See* Exhibit A at p. 1. And even if the parties *had* intended to enter into a binding term sheet—and obviously they intended to formally sign a final written settlement agreement—the parties never stated that they would be bound only at the point when some type of formal agreement was finalized. Indeed, before settlement was agreed on RCBH spoke of "settl[ing] the case today," Exhibit A at p. 2, and after settlement was agreed on both parties conducted themselves as if they believed they had finally settled the case. Both parties released witnesses and cancelled depositions, RCHB sent its wiring instructions, and RCHB apparently accepted GSM's statement, "we've settled." Exhibit A, Exhibit B. Not only is there no explicit agreement between the parties that no settlement would be binding until final and official; but the parties' correspondence and course of action shows that the agreement, though still not formalized, was binding. As such, the lack of an official document does not preclude this Court from enforcing the settlement. *See Yaya v. Driscoll Child.'s Hosp.*, No. 2:24-CV-00205, 2025 U.S. Dist. LEXIS

11

179875, at *3-4 (S.D. Tex. Sep. 15, 2025) (finding "no evidence that the parties agreed they would not be bound until the settlement was reduced to writing" and granting motion to enforce settlement).[2]

Thus, the parties entered into a binding settlement by email. All material terms were agreed. That RCHB later regretted not including a term does not preclude a finding that the parties have settled.[3] Likewise, the fact that the settlement has not yet been reduced to writing in either a term sheet or a full settlement agreement does not preclude a finding of settlement.

### III.     GSM is entitled its attorney's fees for bringing this motion.

A court may impose attorney's fees "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). The Fifth Circuit has held "that a party's refusal to abide by [an arbitration] award 'without justification' qualifies as vexatious behavior that can support the award of attorneys' fees by a federal court." *Seals v. Herzing Inc. - New Orleans*, 482 F. App'x 893, 897 (5th Cir. 2012) (affirming attorney's fees incurred opposing the plaintiff's motion to suppress and preparing a motion to enforce the settlement agreement because the motion to suppress was "unsupportable") (quoting *Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 658 (5th Cir. 2000).

---

[2] Fifth Circuit caselaw regarding enforcing settlements when parties dispute the wording of releases may also be instructive:  In the case of disputed releases, "courts routinely enforce settlement agreements even where the precise wording of a release has not been finalized," and "[t]his remains true even when one of the parties ultimately fails to sign the finalized release." *In re Deepwater Horizon*, 786 F.3d 344, 357 (5th Cir. 2015) (quotation omitted).  Here, the precise wording of the settlement agreement had of course not been finalized, but that is no reason the settlement should not be enforced.

[3] RCHB's contention that this was a "misunderstanding" is also unavailing.  Even if RCHB had a subjective belief the entire time that settlement was conditional only, RCHB never stated that belief.  Although a mutual mistake may be "sufficient ground for rescission or cancellation" of a settlement agreement, *see Wise v. Wilkie*, 955 F.3d 430, 439 (5th Cir. 2020), RCHB's *unilateral* mistake is not.

Here, GSM is entitled to its attorney's fees where RCHB has made a bad faith about-face in what appears to be an attempt to ensure that the Court grants the motion to vacate its claim construction ruling—something which GSM surmises RCHB only belatedly realized the Court may not do once alerted that the parties had settled. There is no justification for RCHB's walking back the settlement to which the parties agreed and forcing GSM to bring this motion to enforce terms the parties had explicitly and unambiguously agreed upon, and GSM respectfully requests this Court grant GSM its attorney's fees.

## CONCLUSION

For the foregoing reasons, GSM respectfully requests that this Court grant its motion, enforce the settlement agreed to by the parties, and grant GSM its attorney's fees associated with bringing this motion, as well as grant GSM any other further relief to which it may be entitled.

DATED this 8th day of May, 2026.

Respectfully submitted,

/s/ J. David Cabello
J. David Cabello
*Attorney-in-charge*
Texas Bar No. 03574500
S.D. Texas I.D. No. 3514
Email: David@CHZFirm.com
James H. Hall
Texas Bar No. 24041040
S.D. Texas I.D. No. 36,904
Email: James@CHZFirm.com
Stephen Zinda
Texas Bar No. 24084147
S.D. Texas I.D. No. 1,692,382
Email: Stephen@CHZFirm.com
Munira A. Jesani
Texas Bar No. 24101967
S.D. Texas I.D. No. 3,019,538
Email: MJesani@CHZFirm.com

13

CABELLO HALL ZINDA, PLLC
801 Travis Street, Suite 1610
Houston, TX 77002
Tel.: 832.631.9990
Fax: 832.631.9991

***Attorneys for Plaintiff, Good Sportsman Marketing, LLC***

## CERTIFICATE OF SERVICE

I certify that on May 8, 2026, I served the foregoing document and any exhibits via e-mail upon all counsel of record.

*/s/ John Watkins*
John Watkins
Paralegal

## CERTIFICATE OF CONFERENCE

Pursuant to Fed. R. Civ. P. 37(a)(1) and the Court's local rules, I certify that a conference was held on May 8, 2026 with Robert Wolter regarding the merits of this motion. The opposing party opposes the motion.

*/s/ J. David Cabello*
J. David Cabello